# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARLOS P. GONZALEZ MALDONADO; ANNETTE ACEVEDO HERNANDEZ; AND THE CONJUGAL PARTNERSHIP FORMED BY THEM.** <br> Plaintiffs <br><br> v. <br><br> **MMM HEALTHCARE, INC., aka MMM, and MEDICARE Y MUCHO MAS; PMC MEDICARE CHOICE, INC. aka PMC; and MEDICAL MANAGEMENT SERVICES ORGANIZATION, INC., aka MSO.** <br> Defendants | CIVIL NO.: <br><br> Re:  Fourteenth Amendment, Antitrust, Monopoly, and Medicare/Medicaid Violations. <br><br> PLAINTIFFS DEMAND TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT**:

**COMES NOW**, the Plaintiffs, through the undersigned attorneys, and respectfully STATE, ALLEGE, and PRAY:

### I. JURISDICTION AND VENUE

1.   This Court has original jurisdiction to hear all claims by the plaintiffs pursuant to the Sherman Act of 1890 as subsequently amended, 15 USC § 1, *et seq.* pursuant to 28 USC §1331.  This Court also has subject matter jurisdiction under the Social Security Act of 1935 as subsequently amended, 42 USC § 301, 1395mm, *et seq.*, and through, direct and implied causes of action recognized by case law.

2.   This Court also has supplemental jurisdiction to hear all state law claims against all parties to this lawsuit under Articles 1049, 1051, and 1208 of the Civil Code of

the Commonwealth of Puerto Rico, 31 LPRA § 3013, 3015, and 3373, pursuant to 28 USC §1367.

3. Venue is proper in this judicial district pursuant to 28 USC § 1391, and 18 USC § 1965.

## II. THE PARTIES

4. Plaintiff Dr. Carlos P. Gonzalez Maldonado (hereinafter also referred to as Dr. Gonzalez) is a natural person, of legal age, married to Plaintiff Dr. Acevedo, and with residence in Guayama, Puerto Rico. Dr. Acevedo is a licensed physician, authorized to practice medicine in the Commonwealth of Puerto Rico.

5. Plaintiff Dr. Annette Acevedo Hernandez (hereinafter also referred to as Dr. Acevedo) is a natural person, of legal age, married to Plaintiff Dr. Gonzalez, and with residence in Guayama, Puerto Rico. Dr. Acevedo is a licensed physician, authorized to practice medicine in the Commonwealth of Puerto Rico.

6. Co-Defendant MMM Healthcare, Inc., also known as MMM, and Medicare y Mucho Más (hereinafter also referred to as MMM) is a corporation organized under the laws of the Commonwealth of Puerto Rico, with capacity to sue and be sued. MMM is registered in the Puerto Rico State Department file number 115708. Main headquarters are located at Torre Chardon, Suite 500, 350 Chardon Avenue, San Juan, PR 00918-2101.

7. Co-Defendant PMC Medicare Choice, Inc., also known as PMC (hereinafter also referred to as PMC) is a corporation organized under the laws of the Commonwealth of Puerto Rico, with capacity to sue and be sued. PMC is registered in the Puerto Rico State Department file number 117582. Main headquarters are located at

Torre Chardon, Suite 500, 350 Chardon Avenue, San Juan, PR 00918-2101. The resident agent, of this corporation is FGR Corporate Services, Inc. with principal address in 1551 Calle Aida, Suite 201, Urb. Caribe, San Juan, PR 00926-2709.

8. Co-Defendant Medical Management Services Organization, Inc., also known as MSO (hereinafter also referred to as MSO) is a corporation organized under the laws of the Commonwealth of Puerto Rico, with capacity to sue and be sued. MSO is registered in the Puerto Rico State Department file number 120886.

### III. FACTS

9. Plaintiff Dr. Gonzalez is a specialist in family medicine health care provider with medical offices in Guayama, Puerto Rico. Dr. Gonzalez cares for patients in his medical office, during house calls, in a number of geriatric centers in Guayama, and in three Hospitals mentioned bellow. Aside from his regular medical practice, Dr. Gonzalez also works in the emergency room during various shifts. Dr. Gonzalez is qualified to hospitalize patients and has privileges to do so in Santa Rosa Hospital, Cristo Redentor Hospital, both located in Guayama, as well as in Lafayette Hospital in Arroyo. During his emergency room shifts, as well as in his regular practice, Dr. Gonzalez hospitalizes patients which are billed to medical plans separately as basic healthcare services and/or supplemental healthcare services. A majority of Dr. Gonzalez' patients are Medicare part A and B beneficiaries, services to whom derive most of his income.

10. Plaintiff Dr. Acevedo is a primary healthcare provider with medical offices in Patillas, Puerto Rico. Plaintiff cares for patients in her medical office, during house calls, and in a geriatric center in Hatillo. When Dr. Acevedo's patients need to be hospitalized as part of their health care they are referred to Dr. Gonzalez, who in turn

provides the service under his rights for hospitalization as described above. A majority of Dr. Acevedo's patients are Medicare part A and B beneficiaries, services to whom derive most of her income.

11. Co-Defendants MMM and PMC collectively and/or separately form a Health Maintenance Organization or HMO as defined in 42 CFR 417.1. As such Co-Defendants have subscribed an HMO risk sharing contract, pursuant to 42 USC § 1395mm, with the Centers for Medicare & Medicaid Services (CMS) of the Department of Health and Human Services. Under such a contract Co-Defendants provide medical services to *enrollees* who in turn are Medicaid part A and B recipients. For such medical services Co-Defendants receive per member, per month payment, or capitation. Defendants do not have in house medical personnel, they provide health care services through medical groups and/or physicians or other service providers as described and authorized in 42 CFR 417.103.

12. Co-Defendants MMM and PMC as an HMO engage in and/or affects interstate commerce in the healthcare industry. Co-Defendants solely offer medical plan coverage to Medicare beneficiaries. Their services and/or medical plan coverage are offered throughout the island. In the southeast area, which includes Guayama, Patillas, Maunabo, Arroyo, Salinas, and Caguas, Co-Defendants are the predominant health coverage provider among Medicare part A, or part A and B beneficiaries, with a market share of 80% or greater. MMM enrollees make up the majority of the patient base among private healthcare providers and professionals in the southeast, with a market share of 70% or greater.

13. MSO is a management services organization which groups health care professionals and providers. Specifically in the southeast area of Puerto Rico MSO groups healthcare professionals and providers per specialty and geographical area. MSO imposes on its members rules and/or restrictions in healthcare services provided to member's patients as far as: equipment to be used; services to be offered; patient consults, medications to be prescribed; and hospitalization and hospital care.

14. On or before December of 2005, each of the Plaintiffs subscribed health care provider contracts with Co-Defendants MMM and PMC. Under the terms of the contracts and the incorporated addendums, Plaintiffs each agreed to provide basic and supplemental healthcare services to Defendants' enrollees on a fee for services basis as authorized pursuant to 42 USC § 1395mm and 42 CFR 417.103. All services to Plaintiffs patients under MMM coverage were billed to defendants separately under the contract, including hospitalization. 42 USC § 1395mm was made a part of the contracts as the statutory provision which enabled the parties to provide medical services to Medicare beneficiaries and the limitations of basic and supplemental services to be paid to Plaintiffs under the provisions of the Social Security Act.

15. On several occasions prior to March of 2008 Plaintiffs were approached by members of Co-Defendant MSO to offer membership as part of the health service provider group for the south east area. On one occasion Dr. Gonzalez attended a meeting where information on the alleged advantages to health service providers that membership with MSO entailed. Plaintiff declined membership.

16. On or before March of 2008, Plaintiffs each received contracts from Defendants where the compensation basis would change from fee for services to

capitation.  Neither Plaintiff signed such contracts and their relationship with Defendants continued on a fee for services basis.  Plaintiffs continued to bill services as provided to Defendants' enrollees as they had done in the past.

17.  On or before April 20, 2008 Plaintiff Dr. Gonzalez received a letter from Co-Defendant MSO dated April 1, 2008 where notice was given that effective on the date of the letter hospitalization in the southeast area of MMM and PMC patients would only be provided by six professional or providers and that they would be the only ones to be consulted in emergency rooms in southeast area hospitals.  The same six named individuals would be the only healthcare professionals to care for MMM and PMC patients admitted to such hospitals.  The communication further indicated that other primary healthcare providers and general practitioners with hospitalization privileges could still hospitalize patients as long as they joined in the MSO program and they abided by the rules and guidelines of the group.  The communication further indicated that emergency room shifts in southeast hospitals would be managed by MSO.

18.  On or before April 20, 2008 Plaintiff Dr. Gonzalez was contacted via telephone by Dr. Hector Ruiz on behalf of Co-Defendant MSO.  The purpose of the call was to verify the receipt of the communication described in the previous paragraph.  During the Conversation Dr. Gonzalez indicated his disagreement with the content of the letter and that he had hospitalized several patient between the 1st of April and then.  Dr. Ruiz replied that the MSO plan as described in the letter was mandatory for MMM and PMC providers and that the billed services since the date of the letter would not be paid.

19.  Plaintiff Dr. Gonzalez was denied the payment of hospitalization services since April 1st, 2008.  Co-Defendant MMM and PMC determinations were timely

appealed pursuant to the service provider contract and applicable rules. Payment was denied once more. Dr. Gonzalez continued to hospitalize patients under his care as he deemed necessary as well as those referred by Dr. Acevedo. The appropriate billing was submitted to MMM and PMC, who in turn denied payment. Services rendered by Plaintiffs which have not been paid by MMM.

20. Co-Defendants MMM and PMC contacted enrollees whose primary physician was Dr. Gonzalez to indicate he could no longer hospitalize patients. AQ number of such patients in turn contacted Dr. Gonzalez' office to inquire about the information received from MMM. The impression among patients was that Dr. Gonzalez had lost his privilege to hospitalize.

21. Plaintiffs contacted the Puerto Rico Health Department to inquire on the legality of Defendants actions, and subsequently filed a complaint against Defendants before that administrative agency. Following other procedural events, Plaintiffs were contacted by the State Secretary of Health who in turn scheduled a meeting where Plaintiffs and the CEO of CMS for Puerto Rico Delia LaSanta were present. During that meeting Plaintiffs entered a complaint against Defendants. Plaintiffs later followed up on the status of the complaint with CMS, to which to date they have no information.

22. Co-Defendants retaliated against Plaintiffs by cancelling their healthcare provider contracts for: their refusal to accept a new contract substituting fee for services for capitation as a means of compensation; for not entering into membership with MSO; for refusing to accept the hospitalization program described in the letter dated April 1, 2008; and for entering a complaint with CMS against Plaintiffs for the hospitalization program. On September 30, 2008 Co-Defendants PMC and MMM issued letters to

Plaintiffs containing notice of cancelation of their Service Provider Contracts effective December 31st, 2009. The cancelation of Plaintiffs' service provider contracts was action entered in retaliation to Plaintiffs

23. The cancellation of the healthcare provider contracts with MMM and PMC have had a crippling effect in Plaintiffs respective medical practices. Plaintiffs each derived 75% or more of their income from the fees invoiced to MMM for services rendered to enrollees who are also Medicare beneficiaries. Since the cancellation of the service provider contracts each Plaintiff has seen a considerable decline in their patient base. Also each Plaintiff is now severely limited in the health services they can provide as the current situation restricts the supplies, equipment and personnel each has access to.

## IV. CAUSES OF ACTION

### COUNT I

### Antitrust Violations

1. All preceding paragraphs are incorporated by reference herein.

2. Through concerted action Defendants have restrained supplemental healthcare services such as hospitalization and hospital care to Medicare beneficiaries in the southeast region of Puerto Rico, to be provided solely by MSO members.

3. In order to provide hospitalization services and hospital care to Medicare beneficiaries, healthcare providers must give up their rights to free assembly, guaranteed by the First Amendment and enter into membership with MSO, and accept a series of restrictions on healthcare services provided to any patient (MMM enrollee or not) as far as: equipment to be used; services to be offered; patient consults; medications to be prescribed; and hospitalization and hospital care.

3. Defendants actions impose illegal restrictions on interstate commerce and trade in the healthcare industry, and violate the dispositions of the Sherman Act of 1890 as prescribed in 15 USC §1.

4. Through Defendant's actions Plaintiffs have been illegally excluded from providing hospitalization and hospital care services to the majority of patients which compose the patient base in the southeast region of Puerto Rico in violation of 15 USC §1. As a direct result of Defendants actions Plaintiffs have been excluded from providing basic and supplemental healthcare services to Medicare beneficiaries in the southeast area thus suffering a considerable reduction in their respective medical practice and their income.

5. The cancelation of Plaintiffs contracts with MMM and PMC was in retaliation for opposing the hospitalization and basic and supplemental restrictions placed on service providers in the southeast of Puerto Rico. Plaintiffs suffered damages including but not limited to 75% of their income, and services rendered which have not been paid by MMM.

## COUNT II

### Violation of the Provisions of the Social Security Act of 1935

1. All the preceding paragraphs are incorporated by reference herein.

2. Co-Defendants MMM and PMC have an HMO services contract with CMS pursuant to 42 USC § 1395mm. Such a contract must comply with the dispositions of 42 CFR § 417.472. When outsourcing healthcare service provider and professional services as those contracted with Plaintiffs MMM and PMC must comply with 42 CFR 417.479 and the requirements contained therein for physician incentive plan.

3. Plaintiffs contracted with Co-Defendants under a fee for services remuneration scheme. A capitation remuneration scheme represented substantial financial risk on each of Plaintiffs as physicians, and its imposition would violate the dispositions of 42 CFR 417.479. Co-Defendants MMM and PMC violated this regulatory provisions by requiring of Plaintiffs to sign a Contract where the fee for services scheme was eliminated and replaced by a capitation scheme. Defendants also violated this regulatory and statutory requirements and public policy when the refusal to enter into a capitation scheme prompted the cancelation of the service provider contracts.

4. An additional violation to the requirements of the physician incentive plan was committed when payment of fees for services rendered to plan enrollees was withheld for not accepting a capitation scheme and for refusing to enter into the hospitalization plan/scheme notified on the letter dated April 1, 2008.

## COUNT III

### Claims under State Law

1. All the preceding paragraphs are incorporated hereto by reference.

2. Co-Defendants MMM and PMC as HMOs with contracts with CMS under 42 USC §1395mm, who administer Medicare funds which are also paid to service providers who provide basic and supplementary care to beneficiaries, are subject to the due process requirements of the Fourteenth amendment of the Constitution of the United States. Under these circumstances, the retaliatory cancelation of a service provider agreement by Co-Defendants is illegal and in breech of contract.

3. Contract violation counts include the breech of contracts between Plaintiffs and MMM and PMC, which is in violation of Plaintiffs right to due process.

The service provider contracts were cancelled in retaliation against Plaintiffs for: their refusal to accept a new contract substituting fee for services for capitation as a means of compensation; for not entering into membership with MSO; for refusing to accept the hospitalization program described in the letter dated April 1, 2008; and for entering a complaint with CMS against Plaintiffs for the hospitalization program. Cancelation of the contracts for the reasons stated above entitle Plaintiffs to redress and payment of the contractual damages suffered pursuant to Articles 1049, 1051, and 1208 of the Civil Code of the Commonwealth of Puerto Rico, 31 LPRA § 3013, 3015, and 3373, pursuant to 28 USC §1367.

      4.    Tortuous Contract Interference acts include those perpetrated by MSO to interfere in the contractual relationship between Plaintiffs and MMM and PMC. By entering into an agreement which restricts the services providers to Medicare beneficiaries Defendants interfered illegally with long standing contractual relationships which caused damages to Plaintiffs.

**PRAYER FOR RELIEF**

      1.    Plaintiffs have suffered economic damages due to the defendant's joint and several liabilities for the injuries caused by their actions described in the previous paragraphs. Such damages are estimated in amount not less than five hundred thousand dollars.

      2.    Plaintiffs have suffered other compensatory damages due to the defendant's joint and several liabilities for the injuries caused by their actions described in the previous paragraphs. Such damages are estimated in an amount not less than one million dollars.

3. Plaintiffs claims fall within the purview of 15 USC § 15, and the threefold damages clause is hereby enacted.

4. Plaintiffs request that punitive damages are imposed in an amount no less than one million dollars.

5. Plaintiffs request that the defendants pay costs and reasonable attorney's fees; pursuant to the Rules of Civil Procedure and 42 USC Section 1988.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter judgment on behalf of the Plaintiffs for the amounts stated above and provide any other remedies available in law or in equity.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on February 4, 2010.

**NICOLAS NOGUERAS JR. LAW OFFICES**
**PO BOX 195386, SAN JUAN, PR 00919-5386**
**TEL. 787-296-1958    FAX. 787-772-4605**

S/ Nicolas Nogueras Cartagena
**NICOLAS NOGUERAS CARTAGENA**
**USDC-PR 109712**
nnogueras@nogueraslaw.com

S/ Amauri D. Padilla Garcia
**AMAURI D. PADILLA-GARCIA**
**USDC-PR 222011**
apadilla@nogueraslaw.com