IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS P. GONZALEZ-MALDONADO<br>ANNETTE ACEVEDO-HERNANDEZ<br>and the conjugal partnership formed by them<br>Plaintiffs<br><br>vs<br><br>MMM HEALTHCARE, INC. (MMM)<br>and MEDICARE Y MUCHO MAS<br>PMC MEDICARE CHOICE, INC. (PMC)<br>and MEDICAL MANAGEMENT SERVICES ORGANIZATION, INC. (MSO)<br>Defendants | CIVIL 10-1184CCC |

## OPINION AND ORDER

This action was filed pursuant to the Sherman Act, 15 U.S.C. §1, the Social Security Act 42 U.S.C. §1395mm and Articles 1049, 1051, and 1208 of the Civil Code of Puerto Rico. It is now before us on defendants' Motion to Dismiss (**docket entry 15**), which plaintiffs opposed (docket entry 21). Defendants filed a Motion for Leave to Reply (**docket entry 22**), which is GRANTED, and the Reply (docket entry 23), is retroactively allowed.

Pleading Standards

Under Fed.R.Cv.P.8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the rule does not require a detailed factual allegation, it demands more than an unadorned, "the defendant-unlawfully-harmed-me "accusation. Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Civil 10-1184CCC                                        2

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2008). The court must be able to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility."

Iqbal, supra, at 1949.

The tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, doe not suffice. Twombly, supra, at 555. We, thus, must conduct our analysis by first identifying the allegations of the complaint that are no more than legal conclusions, which are not to be considered, and then zero on the well-pleaded nonconclusory factual allegations to determine whether they, by itself, plausibly give rise to an entitlement to relief. We are not bound to accept as true "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, at 1949 (quoting Twombly, 127 S.Ct. at 1955). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Twombly, at 1955. We now turn to the factual allegations of the complaint:

Plaintiff's Allegations

Plaintiffs Carlos González-Maldonado and Annette Acevedo-Hernández are licensed physicians. According to the allegations of the complaint González-Maldonado's medical offices are located in Guayama, Puerto Rico (¶9). He also attends patients at geriatric centers and hospitals in Guayama and Arroyo, as well as making house calls. Id. Acevedo-Hernández' offices are in Patillas, Puerto Rico; she also makes house calls and sees

Civil 10-1184CCC                                            3

patient's in a geriatric center in Hatillo (¶10). Both plaintiffs aver that the majority of their patients are beneficiaries of Medicare Parts A and B, from which plaintiffs allegedly derive most of their income.

Defendants MMM Healthcare, Inc. (MMM) and PMC Medicare Choice, Inc. (PMC) are alleged to be Health Maintenance Organizations (HMO) incorporated in Puerto Rico (¶¶6, 7, 11) that have subscribed HMO risk-sharing contracts with the Centers for Medicare & Medicare Services (CMS) of the Department of Health and Human Services, through which they provide medical services to enrollees covered by Medicare (¶11). Plaintiffs further contend that MMM and PMC are the predominant Medicare health coverage providers in the region where they practice.

Plaintiffs further allege that Medical Management Services Organization, Inc. (MSO), which is also a Puerto Rico corporation, "is a management services organization which groups health care professionals and providers . . . per speciality and geographical area." They go on to state that MSO imposes rules and/or restrictions on its members regarding the health services provided to their patients, such as medications to be prescribed, equipment to be used, consultation, and hospital care (¶13).

Plaintiffs aver that in December, 2005 they contracted with MMM and PMC to be healthcare providers under the plans on a fee-for-service basis. They contend that on several occasions prior to March, 2008, they were invited by MSO to become members of its group for the southeast area of Puerto Rico, which they declined (¶15). González-Maldonado and Acevedo-Hernández allege that around March, 2008 they were notified that the compensation basis for the two plans was changing from fee-for-service to "capitation"[1]

---

[1] In discussing the function of HMOs vis a vis ordinary health insurance, the Court of Appeals stated as follows:

> Typically, the contracting primary care physicians do not charge by the visit but are paid "capitations" by the HMO, a fixed amount per month for each patient who selects the doctor as the patient's

Civil 10-1184CCC                                          4

and that they would have to sign new contracts (¶16). Plaintiffs state that neither of them signed the new contracts and continued billing on a fee-for-service basis. Id.

As a result of their refusal to sign the new contract and join MSO, payment of Gonzalez' bills for services provided to hospitalized patients were denied by the plans,(¶¶18-19), and the plan's enrollees for whom González-Maldonado was primary physician were notified that he could no longer hospitalize enrollees. Plaintiffs further aver that in retaliation for not signing the new contracts and joining MSO, and for filing a complaint with Puerto Rico's Dept of Health, defendants canceled their contracts as healthcare providers under the plans (¶22). Plaintiffs claim that defendant's actions impose restrictions on interstate commerce and trade in the healthcare industry in violation of §1 of the Sherman Act, that the capitation remuneration scheme violates the dispositions of 42 C.F.R. §417.479, a regulation promulgated under Social Security Act, and that cancellation of their contract is a breach of Puerto Rico law. As a result of defendants' actions, González-Maldonado and Acevedo-Hernández alleged that their income has been severely reduced and their access to supplies, equipment and personnel has been limited.

Analysis

Defendants move for dismissal on the grounds that (1) the three defendants are related companies, thereby rendering the Sherman Act inapplicable under the "single enterprise" doctrine; (2) there is no private cause of action under the Social Security Act upon which relief may be granted; or, in the alternative, (3) the Court should abstain under

---

primary care physician. Unlike a patient with ordinary health insurance, the HMO patient is limited to the panel of doctors who have contracted with the HMO.

U.S. Healthcare, Inc. V. Healthsource, Inc., 986 F.2d 589, 591 (1st Cir. 1993)

Civil 10-1184CCC                                    5

the Younger doctrine because plaintiffs have an administrative action pending before Puerto Rico's Department of Health.

Plaintiffs opposed dismissal of the Sherman Act claim stating that no evidence exists in the record that MSO is wholly owned by the same entity as MMM and PMC.[2] With their reply, defendants filed an uncontroverted, Unsworn Statement of Maité Morales-Martínez, Secretary of the Board of Directors of MMM, PMC and MSO stating that "MMM, PMC and MSO are sister companies, and are wholly owned by the same parent company, MMM Holdings, Inc."

As set forth in Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 753 (1984):

> The coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of §1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousness, but one. . . . With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If a parent and a wholly owned subsidiary do "agree to undertake a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for [Sherman Act] scrutiny. . . . A parent and a wholly owned subsidiary always have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary....

This exemption to §1 of the Sherman Act was reiterated in American Needle, Inc. v. National Football League, 130 S.Ct. 2201, 2212 (2010), when the Supreme Court noted that, "the coordinated activity of a parent and its wholly owned subsidiary" is not covered, and

---

[2] Much of plaintiffs' opposition to the dismissal motion to an amended complaint filed without authorization that has been stricken by the Court. Therefore, arguments addressed to allegations not in the complaint before us are not considered.

Civil 10-1184CCC                                          6

proceeded to quote from the Copperweld paragraph above.  Therefore, plaintiffs claim under the Sherman Act does not proceed.[3]

Plaintiffs, in their Count II, claim for violation of the Social Security Act.  At ¶3 of this cause of action, González-Maldonado and Acevedo-Hernández aver that "Co-Defendants MMM and PMC violated this regulatory provision [identified in the previous sentence as 42 C.F.R. §417.479] by requiring Plaintiffs to sign a contract where the fee-for-services scheme was eliminated and replaced by a capitation scheme."  They also allege that the cancellation of their contracts and denial of payment for services rendered under their prior contract because they refused to sign new contract "violated Social Security statutory and regulatory requirements.

Defendants contend that plaintiffs have not cited any section of the Social Security Act supporting their assertion payment on a capitation basis is illegal or to support that they have there is even a  private right of action under the Social Security Act.  They do not identify any specific section of the Social Security Act as having been violated, or cite any statute or jurisprudence in support of a federal cause of action linked to concrete allegations of fact.

Plaintiffs' failure to squeeze past Iqbal requirements are highlighted, in their opposition to the dismissal motion, by their clueless references in defense of this cause of action.  For example:

At ¶16, with regard to MMM and PMC being insurance service providers for Medicare, which is paid with federal funds, they argue that "MMM and PMC put themselves in place of the federal government in dealing with medical service providers," by receiving providers bills and paying them with federal funds according to Social Security rules, and that "MMM and PMC become an arm of the state, in this case, the federal government, for they take on a

---

[3]We also note that it is not the insurers that has excluded plaintiffs from participating in the plans.  Rather, it is plaintiffs who have rejected accepting the plans under the terms and conditions of the offered contracts.

Civil 10-1184CCC                                        7

traditional government role and that federal government's interest in Medicare providers is such "that basic constitutional guarantees apply."[4] Plaintiffs do not identify what "traditional government role" they are referring to. They provide no support that the business of health insurance is such a role. See, Logiodice v. Trustees of Maine Cent. Institute, 296 F.3d. 22, 26 (1st Cir. 2002), (Under the "public function" doctrine, private parties performing functions regarded as the sole province of government, may be treated as state actors).

In ¶17 they state that "the interpretation of the Social Security Act is paramount to Plaintiffs case in chief," in response to defendants' challenge to right to sue. Other generic references, without any analysis, include "weather (sic) the cancellation of Plaintiffs service contract is legal or not relies in great part on the interpretation of the Social Security Act and 42 C.F.R. §417.479."

In ¶18, plaintiffs cite Municipality of San Juan v. Corporation Para El Fomento Económico de la Ciudad Capital (COFECC), 415 F.3d. 145 (1st Cir. 2005), a case involving a grant of funds by the federal Department of Housing and Urban Development (HUD) to the Municipality of San Juan, to support the contention that a traditional state law cause of action may present a sufficiently important federal interest to warrant federal jurisdiction. While we recognize that state law claims and federal funding can give rise to federal jurisdiction and, in some circumstances, will support federal jurisdiction, plaintiffs have not demonstrated such a federal interest.

Other than state, at ¶19,"[t]he present case poses issues of federal interest in the interpretation of the Social Security Act," and that "Defendants manage Medicare funds which

---

[4]Plaintiffs' citation to Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52 (D. RI 2003), as supportive of the "federal government's interest" and "that basic constitutional guarantees apply" is an inapposite as well as incorrect. Sarro does not support plaintiffs' contention that liability attached to private corporations "because the entity operated with federal funds." The jurisdictional basis discussed in Sarro, which operated a facility housing federal prisoners, which was the "exercise [of ] powers traditionally exclusively reserved to the government," Id., at 60. Neither federal funding" nor "public interest" entered into the equation in Sarro.

were used to pay claims submitted to the latter under the services contract in issue in this case, plaintiffs, once again, provide no information about what Social Security provisions require interpretation for their state law, breach of contract claim, or why mere management of federal funds create a federal cause of action.

The facts in COFECC make it immediately distinguishable from the case before us. In that case, the Municipality of San Juan brought an action for breach of contract against COFECC, the entity responsible for administering and disbursing funds granted to San Juan by HUD. San Juan contended that COFFECC had misused the federal block grant and sought return of all remaining federal funds held by COFECC and resolution of the trustee relationship between the two parties. It was the alleged misuse of the HUD funds in that case that bootstrapped to state claim into the federal jurisdictional sphere. As the Court of appeals stated at page 148, footnote 6 of the opinion,"Because the propriety of COFECC's conduct turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies, we agree with the magistrate judge and district court that jurisdiction is proper." The Court went on to cite Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308 (2005), which upheld "federal question jurisdiction where a state law claim necessarily implicates a federal issue, 'actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'"

González-Maldonado and Acevedo-Hernández' second cause of action avers a breach of their 2005 contract with MMM and PMC. They repeatedly insist that the capitation method of payment to providers under Medicare is illegal and attempt to distinguish their situation from that in U.S. Healthcare, Inc. V. Healthsource, Inc., 986 F.2d 589 (1st Cir. 1993), cited by defendants in their motion to dismiss, because the case before the Court of Appeals did not involve federal funds. While they repeatedly cite 42 §C.F.R. 417. 479 as needing

Civil 10-1184CCC                                      9

interpretation, they do not even include the text of the section, let alone tell us what their interpretation of the provision is or provide an analysis of how their "interpretation" supports their claim.  We therefore include §417.479 as an appendix to this order.

Section 417.479 addresses the "Requirements for physician incentive plans." For purposes of this section it contains various definition in subsection (c), including:

> <u>Capitation</u> means a set dollar payment per patient per unit of time (usually per month) that an organization pays a physician or physician group to cover a specified set of services and administrative costs without regard to the actual number of services provided. The services covered may include the physician's own services, referral services, or all medical services.
>
> Withhold means a percentage of payments or set dollar amounts that an HMO or CMP deducts from a physician's service fee, <u>capitation</u>, or salary payment, and that may or may not be returned to the physician, depending on specific predetermined factors.

(Our emphasis.)

Subsection (f), which addresses "Arrangements that cause substantial risks" includes two situations involving "(5) Capitation, arrangements, if–(i) The difference between the maximum potential payments and the minimum potential payments is more than 25 percent of the maximum potential payments; or (ii) The maximum and minimum potential payments are not clearly explained in the physician's or physician group's contract."

As can be seen from these excerpts from the C.F.R. section on which plaintiffs rely, capitation as a method of provider payment is allowed under the regulation.  Had plaintiffs continued on in C.F.R. they would have seen, for example, at §424.30, which addresses the scope of claims for payment:

> This subpart sets forth the requirements, procedures, and time limits for claiming Medicare payments. Claims must be filed in all cases except <u>when services are furnished on a prepaid capitation basis by a health maintenance organization (HMO), a competitive medical plan (CMP) or a health care prepayment plan (HCPP).</u>

Civil 10-1184CCC                                        10

(Our emphasis.)

In sum, unlike the facts in COFFECC, supra, González-Maldonado and Acevedo-Hernández, have not alleged malfeasance in the expenditure of the Medicare funds. Nor have they alleged facts that constitute violations of specific sections of the Social Security Act. While they assert the illegality of defendants MMM and PMC requiring them to sign a contract providing payment on a capitation basis, our perusal of the regulation cited by them, as well as other section, demonstrates that capitation is a method of calculating provider payments under Medicare.

What remains is plaintiffs' causes of action under Puerto Rico law for defendants' alleged breaches of contract in failing to pay for services rendered under their contracts, and by terminating the contract as providers on a fee for service basis.

Plaintiffs having failed to demonstrate a the requirement of a "federal issue, 'actually disputed and substantial" that must be resolved for the adjudication of their state law claim, in keeping with Grable & Sons Metal Products, Inc., supra, there is no basis for our exercise of federal jurisdiction.

For the above-stated reasons, defendants Motion to Dismiss (**docket entry 15**), is GRANTED. Plaintiffs' causes of action under the Sherman Act and Social Security Act are DISMISSED, with prejudice. Their claims under Puerto Rico law are DISMISSED, without prejudice.

SO ORDERED.

At San Juan, Puerto Rico, January 25, 2011.

                                              S/CARMEN CONSUELO CEREZO
                                               United States District Judge